**GENERAL DYNAMICS CORPORATION,
and American Airlines, Inc.,
Appellants,**

v.

**Richard T. WHITCOMB, Appellee.**

**No. 14629.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 8, 1970.

Decided June 15, 1971.

---

The issues raised by the two law suits are identical and they were accordingly consolidated for trial. The District Court found the patent valid and infringed and held both General Dynamics and American Airlines liable for an award of damages to Whitcomb. We reverse upon our conclusion that the General Dynamics plane does not infringe the patent.

William K. Kerr, New York City (Albert E. Fey, and Fish & Neave, New York City, Jack E. Greer, and Williams, Worrell, Kelly & Worthington, Norfolk, Va., on the brief) for appellants.

Carl G. Love, Washington, D. C. (William K. West, Jr., Memphis, Tenn., Donald J. Bird, and Cushman, Darby & Cushman, Washington, D. C., Edward L. Breeden, III, and Breeden, Howard & MacMillan, Norfolk, Va., on the brief), for appellee.

Before SOBELOFF,* WINTER and CRAVEN, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

The patent which is the subject of this litigation pertains to a device in the field of aerodynamics. Richard T. Whitcomb is the holder of United States Letters Patent No. 2,967,030 for a "Boundary-Layer Control Means for Lifting Wings." General Dynamics Corporation brought suit against Whitcomb for a declaratory judgment that his patent is invalid and not infringed by General Dynamics. Whitcomb counterclaimed, seeking damages for infringement. A second suit was instituted by Whitcomb against American Airlines, Inc., for infringement of the same patent. American counterclaimed for a declaratory judgment of the patent's invalidity and its noninfringement.

American's asserted liability stems from its purchase and utilization of General Dynamics' Convair 990 aircraft.

I.

The mechanical devices at issue in this case, sometimes referred to as "aerodynamic antishock bodies" or "speed capsules," are intended to diminish the adverse effects of an airflow phenomenon known to aerodynamicists as boundary layer separation. During flight, the air which is displaced by an airplane wing and forced to flow over the wing's upper surface actually moves at a faster speed than the plane itself. Thus, if an airplane is traveling at transonic speeds, i. e., speeds below but near the speed of sound, a portion of the airflow over the wing will be moving at speeds equal to or greater than the speed of sound.

At the point where the air velocity drops from supersonic to subsonic speed, a sharp pressure change or "shock wave" occurs which causes the layer of air immediately adjacent to the wing to separate and lift up from the wing—the condition known as boundary layer separation. As a result, the smooth airflow over the wing deteriorates into a very turbulent flow which adds substantially to the drag on the wing. Once a plane reaches speeds in this transonic range, small increments of additional speed create large increments of additional drag. This drag rise phenomenon acts as a speed barrier preventing a plane from further accelerating without substantial expenditure of power.

The patentee has been employed by the National Advisory Committee for

* Judge Sobeloff attained the status of Senior Circuit Judge on December 31, 1970.

Aeronautics (NACA) since 1943.[1] Prior to 1957 he was aware of efforts being made to prevent boundary layer separation or at least increase the critical speed at which the drag rise phenomenon begins to occur. in January 1957, working at home on his own time, Whitcomb conceived the idea of adding "antishock bodies" to the wings to reduce boundary layer separation.

The Whitcomb antishock body, shaped rather like a slender, elongated football, though it is considerably larger,[2] is situated on top of the wing. It extends just forward of the thickest part of the wing, with the thickest part of the antishock body located near the trailing edge of the wing. It was Whitcomb's theory that such bodies, by decelerating the airflow over the wing, would enable a plane to reach higher speeds before experiencing substantial drag rise. Subsequent wind tunnel tests confirmed that the antishock bodies smooth the flow of boundary layer air at transonic speeds, and that a wing without antishock bodies experiences drag rise at a lower speed than the same wing with the bodies added. On January 3, 1961, U. S. Letters Patent No. 2,967,030 were issued to Whitcomb for his invention.

Each General Dynamics Convair 990 employs four wing bodies very similar to Whitcomb's. He alleges that the two outboard antishock bodies are so similar as to infringe his patent. On appeal from the District Court's judgment in Whitcomb's favor, General Dynamics and American Airlines raise four major contentions: (1) that title to the patent should have vested in the Government, (2) that the patent is invalid because obvious in light of the prior art, (3) that they have not infringed the patent, and (4) that Whitcomb, by his failure promptly to assert his ownership of the invention, has granted General Dynamics an implied license to utilize his patent. Because we hold that the Convair 990 wing bodies do not infringe the patent, we do not reach the other three issues.

## II.

The issue of infringement turns on the wording of claim 1 of Whitcomb's patent:

1. In an airplane, a fuselage, a wing panel extending from said fuselage, and an elongate body on the upper surface of said wing panel and extending generally chordwise thereof, said elongate body, having a forward region of a progressively increasing cross-sectional area approximately the same as that of a cone and *extending just forward of the wing panel region of maximum thickness*, said elongate body further having a region of maximum cross-section near the wing panel trailing edge, and a rear tapered portion extending aft of the wing panel trailing edge. (Emphasis added.)

In contrast to the portion of claim 1 emphasized above, the challenged General Dynamics wing bodies extend four feet forward of the region of maximum wing thickness—53% of the distance from that region to the leading edge of the wing.

The District Court found that the General Dynamics wing bodies do extend "just forward" of the wing panel region of maximum thickness. We hold that finding to be clearly erroneous. If we are to give any substantive content to the phrase "just forward" as distinct from any other type of "forward," it must mean "slightly forward" or "barely forward" of the region of maximum thickness. In our view no permissible

1. In 1958 the title of NACA was changed to the National Aeronautics and Space Administration. Because the old name was still in effect when Whitcomb conceived his invention in 1957, it will be used throughout this opinion for the sake of consistency.

2. On the Convair 990 the two outboard antishock bodies which are alleged to infringe Dr. Whitcomb's patent are each over 24 feet long. The four bodies on the 990, which serve a secondary function as fuel tanks, hold a total of 1136 gallons of fuel.

reading of the phrase "just forward" can encompass the extension of wing bodies four feet forward; the General Dynamics wing bodies extend too far toward the leading edge of the wing to fit the explicit words of the patent.

Whitcomb attempts to escape the plain and unartificial reading of the patent by arguing that his invention has a nose of some rearward dimension. This entire nose is allegedly situated "just forward" of the region of maximum thickness and therefore the "apex" of the nose may be situated well forward of that region. Regardless of whether the word "nose," more than the word "apex," carries some connotation of a distinguishable forward section, we do not construe claim 1 to suggest that the forward region of the patented body may extend as much as four feet forward of the wing panel region of maximum thickness. We think it more reasonable to read claim 1 as describing a forward region that extends *to* just forward of the wing panel region of maximum thickness and no farther.

This leaves us the question whether the General Dynamics outboard anti-shock bodies are sufficiently similar to the patented invention to fall within the doctrine of equivalents. The essence of the doctrine is that "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape." Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950), quoting Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935 (1877).

In applying the doctrine of equivalents, two underlying principles must be kept in mind. First, as the *Graver Tank* case emphasizes, the primary purpose of the doctrine is to prevent fraudulent evasion of the scope of a patent by means of "unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law." 339 U.S. at 607, 70 S.Ct. at 856. Second, differences in form and shape may weigh importantly in the balance "where form is of the essence of the invention." Machine Co. v. Murphy, 97 U.S. at 125, 24 L.Ed. 935.

The record in this case establishes that wing bodies similar to the outboard bodies on the General Dynamics planes deal more successfully with the boundary layer separation problem than bodies fitting the precise description of Whitcomb's claim 1. Indeed, Whitcomb himself, subsequent to submitting his patent application, tested various wing bodies differing from the original bodies disclosed by his patent. A NACA technical report prepared by him and submitted in evidence at trial compares the original Whitcomb bodies, which extended forward only 4% of the distance from the region of maximum wing thickness to the wing's leading edge, with a wing body extending forward 64% of that distance. At trial Whitcomb admitted that his investigations and report establish that a wing body which extends to the farther forward position is more effective than his original wing bodies.

Because this is a case where form and shape are of the essence of the invention, and General Dynamics' alteration does add to the effectiveness of the device, it cannot be considered a mere evasion of the patent. We hold, therefore, that there is no infringement either under the literal terms of the patent or under the doctrine of equivalents.

Reversed.